IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TROY D. LITAKER, | ) |
| Petitioner, | ) ) ) |
| vs. | ) )  Case No. 3:25-cv-00402-DWD |
| UNITED STATES OF AMERICA, | ) ) ) |
| RESPONDENT. | ) ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

In this proceeding, Petitioner Troy D. Litaker, ("Petitioner") requests that the Court vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. 1). The Government opposes that request. (Doc. 15). For the reasons explained below, Petitioner's request is **DENIED**.

## I. Introduction

On December 6, 2023, Litaker pled guilty to a single count indictment charging him with distribution of methamphetamine, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C). He was sentenced to 132 months imprisonment (Crim. Doc. 34)[1]. Following an unsuccessful appeal of his plea and sentencing, he filed the present petition.

His Habeas Petition alleges that his attorney was ineffective in a number of ways:

---

[1] "Crim. Doc" refers to the underlying criminal matter that resulted in Petitioner's conviction and sentencing. 23-CR-30084-DWD

(1). That his attorney failed to "file certain pleadings, motion and objections which were necessary to file to put on an adequate defense" (Doc. 1, P. 4); (2) that his attorney failed to raise on appeal the issue of ineffective assistance of counsel. (Doc. 1, P. 5); (3) that his attorney "failed to make any objections to the PSR which resulted in a miscalculation" of his sentence. (Doc. 1, p. 5-6); (4) that his attorney failed to object to the relevant conduct resulting in a higher offense level than was warranted. (Doc. 1, p. 6); (5) that his attorney failed to object to a miscalculation of criminal history points in the PSR (Doc. 1, p. 6-7); (6) that his attorney failed to secure and share and review with the Petitioner before advising him to plead guilty. (Doc. 1, p.8); that his attorney advised him to reject a "binding" plea offer of 120 months imprisonment and then he received a sentence of 132 months. (Doc. 1, p. 9) and (7) that his attorney failed to submit "multiple reference letters from friends and loved ones" and to have testify the "multiple people [who] show[ed] up in his support all wishing to testify." *Id*. On these bases, Petitioner requests that the court conduct an evidentiary hearing and a resentencing based on "refigured" offense level and criminal history.

## II. Background

FBI agents were investigating Petitioner in February 2022 based on information from a confidential source that Petitioner was involved in the distribution of methamphetamine in the Fayette County, Illinois area. (Crim. Doc. 21, p. 1). During the investigation, agents used a confidential source to arrange for the purchase of methamphetamine from Petitioner. *Id*. On February 9, 2022, Petitioner sold a plastic bag

containing 12.0 grams of actual methamphetamine to a confidential source as this home. *Id.* The transaction was audio and video recorded. *Id*. Petition was paid $320 of official advanced funds in exchange. *Id*. The substance Petitioner sold the Confidential Source was confirmed by the DEA laboratory chemical analysis to be methamphetamine. *Id*. On these facts, Petitioner was indicted. (Crim. Doc. 1)

On December 6, 2023, Petitioner pled guilty to the sole count of the indictment without a plea agreement, but pursuant to a written stipulation of facts. (Crim. Doc. 21).

A PSR was prepared and filed with the Court. It found the Sentencing Guidelines range to be 151 to 188 months based upon on an offense level of 32 and a criminal history of 13 points, resulting in a criminal history category of VI. (Crim. Doc. 47) After adopting the PSR, the Court on April 2, 2024, sentenced Petitioner to 132 months of imprisonment. Litaker timely filed a direct appeal. (Crim. Doc. 39). His appeal was dismissed by the Seventh Circuit Court of Appeals. (Crim. Doc. 52).

### III. Conclusions of Law

Under § 2255(a), the Court will grant the "extraordinary remedy" of vacating, setting aside, or correcting Petitioner's sentence only if he shows it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Notably, a hearing on such matters is not necessary when "the files and records of the case conclusively show that

the prisoner is entitled to no relief." *United States v. Taylor*, 605 F.Supp.3d 1079, 1081 (N.D. Ill. Jun. 1, 2022). The undersigned, as the District Judge who presided over Petitioner's underlying criminal case, "is uniquely suited to determine if a hearing is necessary." *See Taylor*, 605 F. Supp. 3d at 1081 (quoting *Rodriguez v. United States*, 286 F.3d 972, 987 (7th Cir. 2002)), as amended on denial of reh'g and reh'g en banc (7th Cir. 2002) (cleaned up).

As a substantive matter, the Sixth Amendment to the United States Constitution grants criminal defendants the right to the effective assistance of counsel. *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009) (citing *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009)). Under *Strickland*, the petitioner seeking habeas relief must prove: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007); See *Strickland v Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). "Both components of the test must be satisfied; 'the lack of either is fatal.'" *Clay v. United States*, 311 F.Supp.3d 911, 918 (N.D. Ill. Apr. 19, 2018) (quoting *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)).

During this inquiry, it is presumed that a petitioner's counsel was "reasonably proficient." *Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002); *see also Wyatt v United States*, 574 F.3d 455, 458 (7th Cir. 2009) ("[A] movant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.'"); *Clay*, 311 F.Supp.3d at 919 ("The central question in this analysis is not whether counsel's conduct deviated from best practices or most common custom, but instead, whether an attorney's representation amounted to incompetence under prevailing professional norms.") (cleaned up). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 446 U.S. 668, 686 (1984). Put another way, in order to establish counsel's performance was deficient, the defendant must show errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006). "Counsel's representation need not be perfect, indeed not even good, to be constitutionally adequate." *Anderson v. United States*, 94 F.4th 564, 581 (7th Cir. 2024). Petitioners should keep in mind that "[t]o reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight," there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Yu Tian Li v. United States*, 648 F 3d 524, 527-28 (7th Cir. 2011). The strength of this presumption is a recognition that defense counsel's practice, strategy and judgment should not be constrained by worry that a court of review will disagree with the efficacy of the defense he mounts on behalf of his client. Rather, "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the

5

circumstances, and the standard of review is highly deferential." *Hartjes v. Endicott*, 456 F.3d 786, 790 (C.A.7 (Wis.),2006)

"To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Benefiel v. Davis*, 357 F.3d 655, 661 (7th Cir. 2004) citing *Strickland*, 466 U.S. at 694.

Finally, those seeking Habeas relief must provide a factual basis for each claim of ineffectiveness of counsel. In fact, "[h]abeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 114 S.Ct. 2568, 2572, 512 U.S. 849, 856 (U.S.,1994) The 11th Circuit has determined that "[t]he § 2254 Rules and the § 2255 Rules mandate "fact pleading" as opposed to "notice pleading," as authorized under Federal Rule of Civil Procedure 8(a)."*Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). There, the Court reasoned:

> Unlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards. The evidence supporting a claim brought under the doctrine set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), for example, may not be available until the prosecution has run its course. The evidence supporting an ineffective assistance of counsel claim is available following the conviction, if not before. Whatever the claim, though, the petitioner is, or should be, aware of the evidence to support the claim before bringing his petition.

*Id* at 810.

While there is no requirement of precise or elaborate pleading, mere conclusory allegations of ineffective assistance of counsel without specifying the facts that support such allegations is not sufficient under §2255 or Rule 8(a).

With these legal principles in mind, the Court will address Litaker's Petition.

## IV. Discussion

### 1. *Petitioner's Claim That His Attorney Failed to File Certain Pleadings, Motions and Objections*

Petitioner makes the claim that his attorney was ineffective because he "failed to file certain pleadings, motions and objections which were necessary to put on a defense". (Doc. 1, p. 4) His pleadings are deficient. He does not describe the nature or purpose of the pleadings, motions or objections he asked his attorney to file, nor does he provide the facts that would underly such pleadings. In short, he does not describe any facts necessary to make a claim for ineffective assistance of counsel for the failure to file such things. In contrast, Mr. Cronin's affidavit reveals that he specifically advised Litaker of the right and his willingness to file on Litaker's behalf Motions in Limine and, if facts would support it, a motion to suppress. (Doc. 15-2) And, significantly, Mr. Cronin's affidavit provides: "But there are no documents which I refused to file on his behalf." Id. at 1. But apart from Litaker's lack of factual support for ineffective assistance, he does not allege how the failure to file "pleadings, motions and objections" prejudiced him such that the outcome would have been different.

*Strickland* is clear it its mandate that both prongs must be satisfied before a §2255 petition can succeed. The second prong, prejudice resulting from the alleged ineffectiveness of counsel, has not been met. He has not alleged or demonstrated how the filing of these nondescript "pleadings' motions and objections" would have proved to be legitimate or successful such that the course of the litigation would have been altered in his favor. Absent the allegation and showing of prejudice, the claim for ineffective assistance of counsel fails.

2. *Petitioner Claims His Attorney Was Ineffective for Failing to Raise on Direct Appeal the Question of Ineffective Assistance of Counsel.*

Here, Litaker claims that he "instructed his attorney to file a notice with the court of his intentions to file an Appeal" on the basis of ineffective assistance of counsel. This contention fails to satisfy the requirement of either prong under Strickland.

As the Government points out, ineffective assistance claims are "not suited for direct appeal." *United States v. Fuller*, 312 F. 3d 287, 291 (7th Cir. 2002). On Litaker's direct appeal, both Mr. Cronin and the 7th Circuit noted that "[a]s is usually the case, Litaker's argument [of ineffective assistance of counsel] must be reserved for collateral review, when an evidentiary foundation can be developed." (Doc. 15-2, p. 1-2 and Doc. 15-1, pg. 4). So, it was quite proper for Mr. Cronin to forgo seeking review of the question of ineffective counsel on direct appeal.

As to the question of the second prong of the Strickland test, that of prejudice, Litaker's claim fails. Mr. Cronin's decision not to pursue the ineffective assistance of

counsel issue on direct appeal preserved for Litaker the opportunity to have it addressed in a Habeas Corpus petition. Clearly, Mr. Cronin's conduct in this regard caused Litaker no prejudice.

### 3. *Litake's Claims that His Attorney Failed to Make Any Objections to the PSR Which Resulted in a Miscalculation of His Sentence.*

Litaker claims that his offense level would have been lower because his "Pre-Sentence Report contained inaccurate Reletive (sic) Conduct". (Doc. 1, p. 6) He adds that he informed his attorney of the inaccuracies and asked that he object. However, he further alleges that his attorney "threatened" him by advising him that the "PSR writer may retaliate by finding a reason for an Upward Departure or Upward Variance or by finding additional Reletive (sic) conduct to increase his offense level." *Id*. In additional support of his claim he alleges that his PSR's report of his criminal history was also inaccurate. *Id* at 7. Litaker does not, however, identify the alleged misinformation that led to the "miscalculation".[2] Nor does he attempt in any way to illustrate the misinformation by pointing to proper calculations of relevant conduct or which prior convictions he believes should not have been counted in his criminal history. Rather, Litaker offers only vague and conclusory allegations of ineffective assistance, without any hint of factual support that, if proved, would warrant an evidentiary hearing or the relief he requests. This lack

---

[2] In his "Objections to Governments Response" (Doc. 19, p. 2) Litaker states: "Petitioner objects to his calculated guidelines and his criminal history points in which his convictions from 2001-2004 of manufacturing controlled substance was incorrectly used". Again, Litaker does not provide a factual basis for his "objection".

of factual support is not just a problem for Litaker's Petition here, it also created a problem for Mr. Cronin to argue miscalculation at sentencing.

Mr. Cronin states in his affidavit that he was aware of Litaker's disagreement with the government's view of his relevant conduct. He also relates that he was willing to object to the PSR but warned Litaker that objecting may come at a cost, particularly if the true relevant conduct was discovered to be more than provided for in the PSR. These considerations are borne out by the correspondence Mr. Cronin sent to Litaker. (Doc. 15-2 p. 2). In any event, Litaker was informed, and in the end, he decided to forego the objections. At the same time, Mr. Cronin relates that he was concerned that Litaker did not have a good explanation for why he believes the relevant conduct calculation was incorrect. *Id* at 13. He further expressed concern to Litaker that the Court may view with skepticism the claim of a lower relevant conduct when he cannot point to the reason for a lesser amount. Finally, Mr. Cronin expressed apprehension that such an objection would have the effect of "overshadowing" what he felt was the better strategy of highlighting accomplishments and a lesser role in the enterprise. *Id*. Each of these concerns were worthwhile and Litaker makes no effort to suggest that Mr. Cronin's views on these subjects are so far afield as to render the representation he received constitutionally ineffective.

Moreover, Litaker's contention that his "Pre Sentence Report contained inaccurate Reletive [sic] Conduct "(Doc. 1, p. 6), conflicts with the representations Litaker made to the Court during the sentencing. After Litaker was placed under oath, the Court inquired

of him whether he had read the PSR from the beginning to the end and whether he had ample opportunity to review it with Mr. Cronin to ask any questions he may have had. He responded in the affirmative to each inquiry. The Court then asked him whether "everything contained in the that presentence investigation report [is] truthful and accurate" and Litaker responded "Yes, your honor". (Crim Doc. 47 pgs. 5-6)

"[T]he representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding." *Key v. U.S.*, 806 F.2d 133, 136 (7th Cir. 1986) citing *Thompson v Wainwright*, 787 F.2d 1447, 1460 (11th. Cir.). A petitioner's "declarations in open court carry a strong presumption of verity." Id. The same standard applies to representations made while under oath by a defendant at a sentencing hearing. Here, that formidable barrier cannot be scaled without finding that Litaker lied under oath about the contents of the PSR being accurate but is now telling the truth. But "[j]udges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *U.S. v Peterson*, 414 F.3d 825, 827; See also *Bethel v. U.S.*, 458 F.3d 711, 719 (7th Cir. 2006). Litaker offers no compelling explanation for his contradictions.

As noted, Litaker also argues that PSR miscalculates his criminal history and that this resulted in a higher guideline sentence. (Doc. 1, p. 6-7) He complains that Mr. Cronin should have objected to the PSR on that basis. But Litaker does not identify in his Petition

the alleged miscalculation or why he believes the PSR miscalculates his criminal history. At the same time, Mr. Cronin indicates that he is "not aware of any miscalculated criminal history points or an erroneous Criminal History Category being applied to Mr. Litaker". (15-2, p. 2). Because the record is devoid of any indication that Mr. Cronin was ineffective for failing to object to a miscalculation, Litaker's claim for ineffective assistance necessarily fails.

As to the issue of threats of retaliation by Probation if the miscalculations were objected to is without any factual basis. Mr. Cronin confirms that he never communicated to Litaker that he feared "that objections to relevant conduct or to his criminal history could result in the United States Probation Office retaliating by finding a basis for an upward departure, upward variance or additional relevant conduct." (Doc. 15-2, p. 3). Mr. Cronin adds that he had concerns of retaliation given that he had never experienced retaliation despite the many objections he has filed on relevant conduct and criminal history calculation. *Id.*

Litaker's suggestion that he was manipulated into foregoing objecting to the PSR is simply without basis in the record. Litaker provides no plausible allegation for this contention or that, even if true, it would have possibly altered the outcome. Moreover, it is the sentencing judge that makes the final decision whether a variance or departure should be employed, not Probation.

A detour here is worthwhile. The Court wishes to note that it has the impression from the nature of Litaker's argument that he possibly believes that Mr. Cronin was

ineffective because he didn't *win* his case or that he failed to ensure that Litaker would be ordered to serve a lesser sentence. But the 6th Amendment does not guarantee victory. In fact, litigation is fraught with uncertainty and risk.  The lawyer's job is to identify, assess and communicate those risks. The decision whether to assume the risk in hopes of a different result rests solely with the defendant in a criminal matter.  So long as the defendant is well-informed about those risks, he carries a heavy burden of showing that his decision was based on his attorney's conduct that was not "within the wide range of reasonable professional assistance." See *Yu Tian Li v. United States*, 648 F 3d 524, 527-28 (7th Cir. 2011).  Here, there is nothing in the record to suggest that Mr. Cronin's advice and counsel was not within the wide range of reasonable professional assistance or that "conduct so undermined the proper functioning of the adversarial process that the [hearing] cannot be relied on as having produced a just result." *Strickland v. Washington*, 446 U.S. 668, 686 (1984).

As to the issue of prejudice, Litaker offers nothing to support the notion that he was prejudiced by his attorney's conduct. He points to no facts in support that any miscalculation, even if objected to, would have resulted in a reduced sentence or a favorable result. *Strickland* requires as its second prong a showing of prejudice. Absent such prejudice, Litaker cannot sustain a claim that his attorney was constitutionally ineffective as counsel.

4. *Litaker Claims of Deficiencies in Discovery.*

Litaker claims that he failed "to obtain all of the discovery from the government in this case nor did [Mr. Cronin] ever go over any discovery with his client". (Doc. 1 p. 8). Litaker does not allege what items in discovery were not produced or that he did not have the opportunity to review. He makes a bare allegation of the existence of discovery materials that were not produced but fails to support that allegation with any fact or description. Much to the contrary, Mr. Cronin relates that he has no reason to believe discovery was incomplete. (Doc. 15-2, p. 3) Furthermore, he attaches an emailed letter "which memorializes my conversations with him" and the "importance of receiving and reviewing together the evidence the prosecutor claims to have against you-called the "Discovery"." *Id* at 3-4. Mr. Cronin confirms as well that he reviewed the discovery materials with him "many times." *Id*. Litaker does not refute Mr. Cronin's statement nor does he suggest how he was prejudiced by this absent discovery. Accordingly, Litaker's claim of ineffective assistance regarding deficiencies in discovery fails.

5. *Litaker Claims of a Rejected Plea Agreement and Promise of Acquittal.*

Litaker claims that he rejected a "binding" plea agreement plea agreement with a sentence cap of 120 months" on the advice of his counsel. (Doc. 1, p. 9) Litaker also claims that his attorney "informed him that he could get the Defendant acquitted at trial." *Id*. In contrast, Mr. Cronin in his affidavit indicates that "[t]he only plea offer I received from the government was neither for a binding plea agreement, nor did it have a sentence cap

of 120 months." *Id*. He adds that he did not promise Litaker an acquittal. To illustrate, Mr. Cronin also attaches correspondence of November 8, 2023, where he wrote, contrary to Litaker's allegation, that while "[i]t is not to late to decide to fight your case. . . I am concerned about whether we would win at trial, but you have every right to go to trial." *Id*. As the government points out, this letter was dated approximately 5 weeks before the scheduled trial date, not 3 days as Litaker alleges. Litaker does not refute Mr. Cronin's affidavit or his correspondence. But even taking Litaker's Petition in the light most favorable to him, he does not provide a factual basis from which a conclusion can be reasonably made that Mr. Cronin promised an acquittal or that his conduct was objectively and constitutionally deficient.

Litaker's Petition also lacks a showing of prejudice. As the government points out, there was a pre-PSR assessment that Litaker's guideline sentence would be in the range 121-151 months. However, the PSR determined that guideline range was higher – 151-188 months. The Court had warned Litaker before he entered his guilty plea that there are occasions where the anticipated guideline sentence is less than what probation may find it to be, resulting in a possible longer sentence. (Crim Doc. 46, p. 15) He nevertheless decided to proceed with entering his plea of guilty. Though Probation found a higher guideline than was anticipated, Litaker received a downward variance of 19 months from the lower end of the guideline range. Thus, Litaker cannot demonstrate prejudice.

### 6. *Litaker's Claim That His Attorney Was Ineffective at Sentencing*

Litaker next argues that his attorney failed to submit "multiple reference letters from friends and loved ones in regards to the Defendant's character." (Doc. 1, p. 9). This simply is untrue and demonstrably so from the record. Mr. Cronin attached and integrated into his sentencing memoranda over a dozen letters in support of Litaker. They consisted of letters and notes from acquaintances, friends, family members and work supervisors of Litaker. (Doc. 26,1-14) Two additional letters were provided to the Court just prior to sentencing. (Doc. 33) The Court confirmed during the sentencing hearing that it did read and considered the Sentencing Memoranda and letters. (Doc. 47, p. 3-4, 48, 53) So it is quite unclear on what basis Litaker now claims that Mr. Cronin did not bring letters in support to the attention of the Court. Whatever can be said, the record reflects that Mr. Cronin did, in fact, provide to the Court the letters in support and there is nothing Litaker has presented or that is of record that suggests Mr. Cronin's representation was constitutionally inadequate. [3]

Litaker next argues that he was the victim of ineffective assistance of counsel when he "had multiple people show up in his support all wishing to testify on behalf of the Defendant" but Mr. Cronin did not call them as witnesses. Mr. Litaker does not name the

---

[3] The Court addressed Mr. Litaker at sentencing: "I think it would be worth mentioning that we're an hour and 35 minutes into this sentencing. Most are 45 minutes long, and I think the length isn't what is important. What is important is just the depth and breadth of the information that Mr. Cronin has presented on your behalf. I hope you recognize that level of advocacy is not universal." Doc 47, p 55.

witnesses, their relationship to him or what testimony they may have offered if called. Again, Litaker offers nothing factually substantive to support his claim.

Nevertheless, Mr. Cronin offers his affidavit to refute Litaker's allegations and to point out that he did not think any witnesses were necessary. But Mr. Cronin also indicates in his affidavit that Litaker did not want to have anyone in attendance at his sentencing hearing. See (Doc. 15-2, p. 6) ("[a]s late as March 25, 2024, Mr. Litaker did not want anyone to even attend the sentencing hearing on his behalf.")  Because Mr. Cronin thought attendance by supporters to be important, he invited by email nine individuals to attend sentencing. *Id*. Litaker does not refute these things. Litaker does not suggest in any way that Mr. Cronin's strategy against inviting supporters who he has not interviewed to testify falls below the objective standard of reasonableness. Nor does he suggest that calling these supporters as witnesses would have produced a better result for him. So, he points to no prejudice as a result of Mr. Cronin's decision not to call supporters as witnesses. Accordingly, Litaker's claim that he received ineffective assistance by his counselor for failing to call witnesses at sentencing fails, too.

7. *Litaker's Request for Evidentiary Hearing*

Litaker requests an evidentiary hearing but does not suggest what evidence he would need to support any of his claims. But "[n]ot every petitioner who seeks relief pursuant to § 2255 is entitled to an evidentiary hearing." *Cooper v. United States*, 378 F.3d 638, 641–42 (7th Cir.2004). A district court need not hold an evidentiary hearing "if the

petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir.2001) (quotation marks omitted); *Boulb v. U.S.,* 818 F.3d 334, 339 (7th Cir. 2016). Nor is a hearing necessary when "the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Taylor*, 605 F.Supp.3d 1079, 1081 (N.D. Ill. Jun. 1, 2022)

As noted above, Litaker has wholly failed to make any specific or detailed factual allegations to support any of his myriad claims. His allegations of ineffective assistance are not only vague and conclusory, but many are also in direct contravention to the record. Likewise, he fails to show prejudice in that the outcome would likely have been different had his attorney performed differently. His failure to make the required showing of sufficient prejudice defeats his ineffectiveness claim. *See Strickland*, 466 U.S. at 700. And though given the opportunity to reply, he does not provide expansion or enhancement of the bare allegations contained in his Petition. At each turn, Litaker has failed to allege a plausible factual basis for the relief he seeks in his Petition. But, in any event, the record clearly shows he is entitled no relief. Accordingly, the Court will decline to hold an evidentiary hearing on Litaker's Petition.

## V. CONCLUSION

For the reasons explained above, the Court finds that Litaker is entitled to no relief on his Petition. (Doc. 1). Accordingly, Litaker's request to vacate, set aside, or correct his sentence under § 2255 is **DENIED** without a hearing. *See United States v. Taylor*, 605

F.Supp.3d at 1081. The case is **DISMISSED with prejudice**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

Rule 11(a) of the Rules Governing § 2255 Cases in the U.S. District Courts requires the issuance or denial of a certificate of appealability when a final order is entered against an applicant. Such a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 281 (2004); citing *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008)); *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court **FINDS** the alleged grounds for relief lack merit, and reasonable jurists would not find that conclusion debatable or wrong. Since Petitioner has not made a "substantial showing of the denial of a constitutional right," the Court **DECLINES** to issue a certificate of appealability.

**SO ORDERED.**

Dated: February 14, 2026

/s/ *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge